UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------X

JOHANN GARCIA,

                    Petitioner,                    06 Civ. 13707

        -against-                                  OPINION

ATTORNEY GENERAL OF THE STATE
OF NEW YORK,

                    Respondent.

------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 3|2|08

A P P E A R A N C E S:

Attorneys for Petitioner

Goldstein & Weinstein
888 Grand Concourse
Bronx, NY  10451
By:  David J. Goldstein, Esq.


Attorneys for Respondent

Robert T. Johnson, Esq.
District Attorney, Bronx County
198 East 161st Street
Bronx, NY  10451
By:  Alexis Pimentel, Esq.

**Sweet, D.J.**

Johann Garcia ("Garcia" or the "Petitioner") has
filed a petition for habeas corpus, pursuant to 28 U.S.C. §
2254, based upon a claim of ineffective assistance of
counsel. For the reasons set forth below, the petition is
denied.

## Prior Proceedings

The Petitioner filed his petition on December 4,
2006. The State filed its opposition and the matter was
marked fully submitted on March 23, 2007.

## The State's Case

During the evening of November 20, 1997, while
driving in a van, Gilbert Hernandez ("Hernandez"), Rafael
Arce ("Arce"), and Luis Silva ("Silva") were looking for
Petitioner to recover some money Petitioner owed Silva.
Silva saw Petitioner and asked him to step inside the van.
Once inside the van, Silva requested that Petitioner pay
him. Petitioner said that he was unable to repay him at
that time and an argument ensued. Petitioner exited the

1

van, and told Silva that he would "beep" him later that day when he had the money.

Later that evening, Hernandez, Arce, and Silva received a "beep" from Petitioner, and were instructed to meet him at a building on East 156th Street in the Bronx. Before Silva and the others arrived, Petitioner told Lenny Baez ("Baez") that he owed Silva money. Petitioner informed Baez that he had "beeped" Silva to pay him, but that he had no intention of doing so. Petitioner then gave Baez a glimpse of a black automatic gun.

Arce, who was driving the van, double parked in front of the building. Petitioner approached the front passenger side of the van, where Silva sat, pulled a black automatic gun out of his pocket, and shot at Silva. Realizing that Silva was wounded, Arce drove off. Petitioner continued shooting at the van.

After driving approximately five minutes, Arce sought help from a police officer, who flagged down a passing ambulance. Silva later died at Lincoln Hospital from a gunshot wound to the left chest, which perforated his left lung and pulmonary artery.

## The Defense

Petitioner claimed that Silva approached him to help him sell marijuana. Petitioner testified that he sold drugs for Silva but was unable to pay him back. Petitioner alleged that on November 20, 1997, while on 175th Street and Broadway, he got into a van with Silva, Arce, Hernandez, and David, a close friend of his. According to Petitioner, Silva said that he wanted his money, punched Petitioner and David, and then threatened to throw them out of the van while it was moving.

Petitioner testified that he exited the van, told Silva that he did not want any problems, and would get him the money. Petitioner claimed that he borrowed $200 from David's aunt, and that he told his aunt to bring him $200 at East 156th Street in the Bronx. Petitioner stated that he beeped Arce twice and instructed Silva to go to 432 East 156th Street to pick up the money.

According to Petitioner, he waited outside of the building with some friends. Silva arrived in the van and parked in front of the building. Petitioner stated that as he approached the van, Silva immediately asked for his

3

money.  Petitioner claimed that he stood next to the

passenger window and told Silva that he did not have all of

it.  Petitioner testified that Silva pulled out a gun with

his right hand.  Petitioner alleged that he wrestled the

gun from Silva's hand, but when Silva "stood up a little

bit," Petitioner got "nervous" and fired approximately four

or five shots at the van.  Petitioner then threw the gun

back into the van and ran.

Marilyn Sanchez, Petitioner's sister, and Maria

and Rafael Fernandez, Petitioner's cousins, all testified

that Silva was left-handed.

On December 15, 1999, a judgment was rendered in

the Supreme Court of Bronx County, convicting Petitioner,

after a jury trial, of Murder in the Second Degree (N.Y.

Penal Law § 125.25(1)) and Criminal Possession of a Weapon

in the Second Degree (N.Y. Penal Law § 265.03) and

sentencing him to concurrent terms of imprisonment of 25

years to life and 7-1/2 to 15 years, respectively.

## Post-Trial Proceedings

In motion papers dated March 22, 2002,
Petitioner, through counsel, David J. Goldstein, Esq.,
moved before the Supreme Court of Bronx County, pursuant to
N.Y. Crim. Proc. Law (hereinafter "NYCPL") § 440.10(1)(h),
to vacate the judgment of conviction, claiming that his
trial counsel, Herman Graber, Esq., was ineffective.[1]
Petitioner alleged that trial counsel: (1) spent very
little time with him preparing for trial, (2) never advised
him that Petitioner's version of events was "at
loggerheads" with the ballistics evidence, and (3)
inappropriately consented to the State's request that the
jury be re-instructed on the issue of justification. See
Petr.'s NYCPL § 440.10 Mot.; Resp't Affirmation in Opp.

On June 3, 2003, the Honorable Steven Lloyd
Barrett, an Acting Justice of the Supreme Court, Bronx
County, denied Petitioner's motion pursuant to NYCPL §
440.10(2)(b), as "sufficient facts appear[ed] on the record
to allow for adequate appellate review."[2]  The court stated

---

[1] The New York State Office of Court Administration indicates that Mr.
Graber is now deceased.
[2] NYCPL § 440.10(2)(b) states that "the court must deny a motion to
vacate a judgment when . . . [t]he judgment is, at the time of the
motion, appealable or pending on appeal, and sufficient facts appear on

5

that even if it were to consider the issue on the merits,
it "would find that the reinstruction delivered to the jury
was appropriate, and, that counsel's consent in this matter
did not constitute ineffective assistance." See People v.
Garcia, No. 1045/98, slip op. at 7 (N.Y. Sup. Ct. June 3,
2003). According to the State, the Clerk's Office of the
Appellate Division, First Department, has confirmed that
Petitioner never filed a NYCPL § 460.15 motion seeking
leave to appeal the denial of the NYCPL § 440.10 motion.

In March 2005, Petitioner, through his assigned
appellate counsel, filed a brief in the Appellate Division,
First Department, raising the following claims: 1) The
court's supplemental instruction on justification was
erroneous, as it significantly reduced the State's burden
of proof by removing the issue of Garcia's subjective
beliefs from the jury's consideration, and denied him a
fair trial; 2) Trial counsel's inexplicable and inexcusable
failure to object to the supplemental justification
instruction denied Garcia his constitutional right to the
effective assistance of counsel and due process of law; and
3) The sentence imposed, twenty-five years to life, was

the record with respect to the ground or issue raised upon the motion
to permit adequate review thereof upon such an appeal."

6

harsh and excessive and should be reduced in the interests
of justice.

In September 2005, Petitioner, through his
assigned appellate counsel filed a reply brief in the
Appellate Division, First Department, reasserting the claim
that the court's supplemental charge erroneously eliminated
the subjective component of the justification defense and
thus denied Garcia a fair trial.

On September 20, 2005, the Appellate Division,
First Department, unanimously affirmed Petitioner's
conviction. People v. Garcia, 800 N.Y.S.2d 842 (App. Div.
2005). The Court held that:

> Defendant failed to preserve his challenge to the
> court's justification charge and we decline to
> review it in the interest of justice. Were we to
> review this claim, we would conclude that the
> charge fully explained the objective and
> subjective aspects of the justification defense
> and that the language challenged by defendant,
> when viewed in context of the entire charge and
> the evidence presented at trial, could not have
> misled the jury as to the People's burden of
> proof. Similarly, we conclude counsel's failure
> to object to the language challenged on appeal
> did not deprive him of effective assistance under
> either the federal or state standards.

Id. (internal citations omitted).

7

On September 26, 2005, Petitioner sought leave to
appeal the decision of the Appellate Division, First
Department, before the New York State Court of Appeals.

On December 5, 2005, the Honorable George Bundy
Smith, then an Associate Judge of that Court, denied
Petitioner's application. People v. Garcia, 6 N.Y.3d 753
(2005).

## Trial Counsel Was Not Constitutionally Ineffective

Where a petitioner seeks habeas corpus relief,
under the Antiterrorism and Effective Death Penalty Act, 28
U.S.C. § 2254:

> a writ may issue only if . . . the state court
> adjudication resulted in a decision that . . .
> involved an unreasonable application of . . . clearly
> established federal law, as determined by the Supreme
> Court of the United States. . . . Under the "contrary
> to" clause, a federal habeas court may grant the writ
> if the state court arrives at a conclusion opposite to
> that reached by [the Supreme Court] on a question of
> law or if the state court decides a case differently
> than [the Supreme Court] has on a set of materially
> indistinguishable facts. Under the "unreasonable
> application" clause, a federal habeas court may grant
> the writ if the state court identifies the correct
> governing legal principle from [the Supreme Court's]
> decisions but unreasonably applies that principle to
> the facts of the prisoner's case.

8

Williams v. Taylor, 529 U.S. 362, 413 (2000) (quoting 28 U.S.C. § 2254) (O'Connor, J., concurring, writing for the majority in this part).

In a petition for habeas relief based on a claim of ineffective assistance of counsel, the question as to whether the matter is governed by clearly established federal law is "easily answered because the merits of [such] claim[s] are squarely governed by [the Supreme Court's] holding in Strickland v. Washington." Id. at 390; see also Aparicio v. Artuz, 269 F.3d 78, 95 (2d Cir. 2001). A petitioner is not required to further demonstrate that his particular theory of ineffective assistance of counsel is also clearly established. Aparicio, 269 F.3d at 95 n.8; Sellan v. Kuhlman, 261 F.3d 303, 309 (2d Cir. 2001). Application of the New York State standard set forth in People v. Baldi, 54 N.Y.2d 137 (1981), is essentially consistent with the Strickland standard, so that relief is appropriate only if the governing legal principle was unreasonably applied by the state court. Lindstadt v. Keane, 239 F.3d 191, 198 (2d Cir. 2001).

To demonstrate constitutional ineffectiveness, a defendant must first show "that counsel's performance was

9

deficient." Strickland, 466 U.S. at 687; see also Lockhart v. Fretwell, 506 U.S. 364, 369 (1993); Lindstadt, 239 F.3d at 198. To make this determination, the court must decide whether "in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." Strickland, 466 U.S. at 690. Counsel's conduct must be judged on facts of the particular case, viewed as of the time of counsel's conduct. Id. The reviewing court must make every effort to "eliminate the distorting effects of hindsight" and must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. at 689.

In addition to showing deficient performance, the defendant must show that the deficient performance prejudiced the defense; it must be shown that there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. A reasonable probability is one that "undermine[s] confidence in the outcome." Strickland, 466 U.S. at 694.

Here, Petitioner cannot establish that 1) counsel's representation fell below an objective standard of reasonableness, and 2) he suffered prejudice as result of trial counsel's performance.

Under New York Penal Law (hereinafter "NYPL") § 35.15(1), an individual is permitted to use force upon another person "when and to the extent he reasonably believes such to be necessary to defend himself or a third person from what he reasonably believes to be the use or imminent use of unlawful physical force by such other person." Deadly force, however, is only justified when the actor "reasonably believes that such other person is using or about to use deadly physical force." NYPL § 35.15(2)(a). The New York Court of Appeals has explained justification as follows:

> To determine whether a defendant's conduct was justified under Penal Law § 35.15, a two-step inquiry is required. The jury must first determine whether defendant actually believed that deadly physical force was necessary. If the People fail to meet their burden of proving that defendant did not actually believe that the use of deadly physical force was necessary, then the jury must move on to the second step of the inquiry and assess the reasonableness of this belief.
>
> We held in [People v. Goetz, 68 N.Y.2d 96, 114-15 (1986)] that Penal Law § 35.15 requires a jury to

11

> consider both subjective and objective factors in
> determining whether a defendant's conduct was
> reasonable. We stated that "a determination of
> reasonableness must be based on the
> 'circumstances' facing a defendant or his
> 'situation'. . . . [A] jury should be instructed
> to consider this type of evidence in weighing the
> defendant's actions." Evidence of a defendant's
> "circumstances" includes relevant knowledge that
> the defendant may have had about the victim, the
> physical attributes of all those involved in the
> incident, and any prior experiences that the
> defendant may have had "which could provide a
> reasonable basis for a belief that another
> person's intentions were to injure or rob him or
> that the use of deadly force was necessary."

People v. Wesley, 76 N.Y.2d 555, 559 (1990) (emphasis in
original) (internal citations omitted).

Here, in its initial charge, the court informed
the jury that the State had the burden of proving every
element of the crimes charged beyond a reasonable doubt
(Tr. 1477-80). The court then instructed the jury that if
they found that the State had proven beyond a reasonable
doubt the elements of any of the charged crimes, they must,
before rendering a guilty verdict, consider whether
Petitioner was justified in causing the death of Luis Silva
(Tr. 1498-99). That is, when justification is raised, it
becomes an element of the crime and the State is required
to prove beyond a reasonable doubt that Petitioner was not

12

justified in his actions (Tr. 1514). The court explained
that:

> A person may use deadly physical force against
> another without being liable for the crime of
> murder or other crime only when that actor
> reasonably believes that the other person against
> whom he has directly used deadly physical force
> is about to use deadly physical force against the
> actor.
>
> And, furthermore, that the actor reasonably
> believes that his own use of deadly physical
> force is necessary to prevent the imminent use of
> deadly physical force against him.

(Tr. 1515).


The court, after repeating the definition, noted
that the law of justification does not authorize a person
to use deadly physical force against another person in all
circumstances (Tr. 1516). Rather, justification "entails
two factual findings," one subjective and one objective
(Tr. 1519). That is, Petitioner himself must believe that
deadly physical force is necessary, and it must be
established that a reasonable person in the Petitioner's
position could have had such a belief (Tr. 1519-20).
Furthermore, the court noted that, in assessing the
subjective prong:

13

> It does not matter if the defendant was or
> may have been mistaken in his belief so long
> as that belief was honestly held by the
> defendant and so long as the belief was
> reasonable.

(Tr. 1521).

The court further instructed the jury that both
the objective and the subjective prongs are factual
determinations that should be made based on their
"evaluation of the precise circumstances that existed at
the time that Petitioner shot Silva, and primarily based on
[their] assessment of the defendant's testimony as to what
it is that he honestly believed" (Tr. 1521-22). The court
advised that the jury was to first consider the subjective
prong and then the objective prong (Tr. 1522-23).

The court then reiterated that Petitioner was not
required to prove that he was justified, but rather, the
State was required to prove that defendant was not
justified. In order to satisfy that burden, the court
noted, the State was required to prove one of five things
beyond a reasonable doubt (Tr. 1526):

> Item number one, if the People prove beyond a
> reasonable doubt that the defendant did not
> actually and honestly believe in his own mind

14

that deadly physical force was eminently [sic]
about to be used against him the People have
satisfied their burden of disproving
justification. . . .

Item number two, even if defendant did
subjectively possess such a belief, if the People
have proven beyond a reasonable doubt that it was
not reasonable for him to so believe under the
circumstances that deadly physical force was
imminently about to be used against him then the
People have satisfied their burden of proof.

Alternatively, item three, if the People have
proven beyond a reasonable doubt that the
defendant did not actually and honestly belief
[sic] that his own use of deadly force was
necessary to defend himself from any use of
deadly physical force, the People have satisfied
their burden of disproving justification.

Alternatively, item four. Even if defendant did
subjectively possess that belief, if the People
have proven beyond a reasonable doubt that it was
not reasonable for him to so believe under the
circumstances that his own use of deadly physical
force was necessary to defend himself from the
use of deadly physical force then the People have
satisfied their burden of proof by disproving
justification.

(Tr. 1526-28). And, finally, if the State proves that

Petitioner knew that he could have retreated, then the

State has satisfied its burden of disproving justification

(Tr. 1529). Petitioner has conceded that these

instructions were proper (Petr.'s Mem. in Supp. at 25).

The prosecutor, during a post-charge conference,
requested that court give the jury a sixth justification
charge possibility. The prosecutor indicated that all of
the previous explanations relied heavily on Petitioner's
version of the events, which required the jury to accept
Petitioner's story when considering justification. The
prosecutor explained that the jury should also be informed
that the State could disprove justification beyond
reasonable doubt if it was established that Silva never
used or threatened use of imminent physical force against
Petitioner (Tr. 1535-36).

Defense counsel objected and argued that the
prosecutor's request would require the court to marshal
evidence, which would be unfair to Petitioner (Tr. 1536).

The trial court indicated that both parties
raised valid points and that it saw no grave harm in
clarifying the charge. The court then stated:

> I am going to advise the jurors that the
> People will have satisfied their burden of
> proof of disproving justification beyond a
> reasonable doubt if they have proven beyond
> a reasonable doubt that Luis Silva never
> used or threatened the imminent use of
> deadly physical force.

(Tr. 1538). Defense counsel indicated that he was
concerned that the instruction amounted to a marshaling of
evidence (Tr. 1541).

The trial court replied that the instruction
did not marshal evidence, but that it made reference
to the evidence without discussing the particular
evidence (T. 1541). After the court's response,
defense counsel withdrew his objection (Tr. 1541-42).

The court then charged the jury that:

> If you find that the People have proven
> beyond a reasonable doubt that Luis Silva
> never used or threatened to use the imminent
> use of deadly physical force against
> defendant . . . , then the People have met
> their burden of disproving justification
> beyond a reasonable doubt (Tr. 1543).

The charge, as a whole, properly instructed the
jury that they should consider Petitioner's conduct,
including all the surrounding circumstances, and his
testimony, to determine if he reasonably believed that
Silva was about to use deadly physical force against him,
and that his own use of deadly physical force was
necessary, as well as that Petitioner's subjective beliefs

were crucial to the jury's determination regarding justification.

The record indicates that the jurors had a difficult time comprehending the justification defense, since they requested additional instruction (Tr. 1615). At no point did the court instruct the jury to disregard its initial instructions or to give greater weight to the supplemental charge than to the rest of the charge. Counsel's decision to withdraw his objection did not deprive Petitioner of effective assistance of counsel.

As noted above, the opinion of the Appellate Division, First Department, states:

> Defendant failed to preserve his challenge to the court's justification charge and we decline to review it in the interest of justice. Were we to review this claim, we would conclude that the charge fully explained the objective and subjective aspects of the justification defense, and that the language challenged by defendant, when viewed in context of the entire charge and the evidence presented at trial, could not have misled the jury as to the People's burden of proof.

Garcia, 21 A.D.3d at 813 (internal citations omitted). Citing, inter alia, People v. Benevento, 91 N.Y.2d 708

18

(1998), and Strickland, the court held that "counsel's

failure to object to the language challenged on appeal did

not deprive him of effective assistance under either the

federal or state standards." Id.

As the court's charge as a whole was correct,

trial counsel was not ineffective for failing to object to

the court's supplemental instructions. See Ramos v.

Phillips, No. 05 Civ. 0023 (ARR), 2005 WL 1541046, at *9

(E.D.N.Y. June 30, 2005) ("The failure to object to jury

instructions that are legally correct as given does not

constitute ineffective assistance of counsel.") (citing

Aparicio v. Artuz, 269 F.3d 78, 99-100 (2d Cir. 2001)).

Accordingly, the state court's denial of Petitioner's

ineffective assistance claim did not constitute an

unreasonable application of Strickland.

Even assuming that the failure to object to the

supplemental instructions was "professionally

unreasonable," it would "not warrant setting aside the

judgment of a criminal proceeding if the error had no

effect on the judgment." Lynn v. Bliden, 443 F.3d 238, 247

(2d Cir. 2006) (quoting Lindstadt, 239 F.3d at 204). "To

merit habeas relief, the defendant must show that the

deficient performance prejudiced the defense." Id. Thus, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different." Id.

A reviewing court "must consider the totality of the evidence before the judge or jury." Lynn, 443 F.3d at 248 (quoting Strickland, 466 U.S. at 695-96). "[A] verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support." Id. In the end, "a court making the prejudice inquiry must ask if the defendant has met the burden of showing that the decision reached would reasonably likely have been different absent the errors." Id.

Here, there was evidence that Petitioner had intentionally shot and killed Silva over a debt. Baez testified that Petitioner approached him in the lobby of 432 East 156th Street, explained that he owed someone money, and that he had beeped him, but that he had no intention of paying him. Petitioner then gave Baez a glimpse of a black automatic gun, but Baez refused to help

him. Arce and Hernandez asserted that Petitioner
approached from the front of the van and began shooting
into the passenger side, where Silva was seated. As the
van was under fire, Arce started to drive away.

The damage to the van and the wounds that caused
Silva's death were wholly consistent with the testimony
that Petitioner's first shots were fired as he approached
the front of the van, and that he continued shooting as the
van pulled away, disproving Petitioner's justification
defense beyond a reasonable doubt. Detectives Weissberger
and Mulzac testified that one bullet was found lodged in
the dashboard, that there was a bullet hole on the
passenger side of the windshield, from which the bullet
traveled diagonally to the captain's chair in the middle
row on the driver's side, and that the passenger side
window, which had been partially open, was shattered.
Moreover, Silva suffered a fatal gun shot wound to the left
side of his chest, above and inside the right nipple, which
perforated his sternum, his left lung, and his left
pulmonary artery. He was also shot on the left side of his
chest, towards the outside and above his left nipple.

Even without the supplemental instruction,
Petitioner's justification defense could have been rejected
by the jury, because Petitioner's testimony, taken together
with the testimonies of his witnesses, was inconsistent and
unbelievable. Petitioner claimed that he wrestled the gun
away from Silva's right hand and fired the gun four to five
times while standing next to the passenger side of the van.
Yet, he provided no explanation for the bullet holes at the
front of the van, in the windshield and dashboard. He
provided no support for his contention that Silva was
poised and ready to fire a gun that he held in his right
hand, even though Silva was left-handed. His justification
defense was further undermined by the testimony of Marilyn
Sanchez, Maria Fernandez, and Rafael Fernandez, his own
witnesses, who each testified that Silva was, in fact,
left-handed.

Here, the supplemental instruction could not
have prejudiced Petitioner, since all the credible evidence
disproved his justification defense beyond a reasonable
doubt. Accordingly, Petitioner failed to establish the
prejudice element of the ineffective assistance standard.

22

For the reasons stated above, the state court's determination that Petitioner received constitutionally effective assistance of counsel was not contrary to or an unreasonable application of Strickland. Accordingly, the petition is dismissed.

It is so ordered.

**New York, N.Y.**
**March 6 , 2008**

ROBERT W. SWEET
U.S.D.J.

23